UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 15-CR-49 (05) (MJD/FLN)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) PLEA AGREEMENT AND |
| Plaintiff, | ) SENTENCING STIPULATIONS |
| | ) |
| v. | ) |
| | ) |
| 5. ZACHARIA YUSUF ABDURAHMAN, | ) |
| | ) |
| Defendant. | ) |

The United States of America and Zacharia Yusuf Abdurahman (hereinafter referred to as "the defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

## PLEA AGREEMENT

1. **Charge**. The defendant agrees to plead guilty to Count One of the Superseding Indictment, which charges the defendant with conspiracy to provide material support and resources to members of *ISIL (Islamic State of Iraq and the Levant)*, a designated foreign terrorist organization, in violation of Title 18, United States Code, § 2339B. The government agrees to not prosecute the defendant for any additional offenses disclosed to the government by the defendant or known by the government as of the date of this agreement. However, all conduct known by the government can and will be used as relevant conduct under the Federal Sentencing Guidelines and as factors under 18 U.S.C. § 3553(e) at the defendant's sentencing. Upon sentencing on Count One, the government

SEP 18 2015
U.S. DISTRICT COURT MPLS

will move to dismiss the remaining charges in the Superseding Indictment as to the defendant.

2. **Factual Basis and Stipulated Facts**.  It is stipulated that Count One of the Superseding Indictment is true and that the defendant is guilty of that charge. The defendant agrees that the following facts are accurate and that the government has sufficient evidence to prove the following at trial:

Between on or about March 1, 2014, and June 1, 2014, the defendant became aware of a group of individuals in both the United States and outside the United States (hereinafter, "the co-conspirators") who had traveled or who desired to travel overseas to join *ISIL (Islamic State of Iraq and the Levant)*, a designated foreign terrorist organization. Because defendant wished to travel to Syria to join and fight with *ISIL* himself, he joined this group of aspiring travelers. Defendant was aware that *ISIL* was a designated foreign terrorist organization that engaged in terrorism and terrorist activity.

Throughout 2014, the defendant participated in several meetings occurring in the District of Minnesota during which he and co-conspirators discussed traveling to Syria to join *ISIL*. The defendant and his co-conspirators discussed, among other things, the means of funding travel to Syria, and potential routes of travel from Minnesota to Syria that would best elude law enforcement. After November of 2014, the defendant discussed the feasibility of obtaining and using fraudulent travel documents to travel to Syria. As of June 1, 2014, the defendant had become aware that co-conspirator Abdi Nur had successfully traveled to Syria and joined *ISIL*. The defendant was also aware that co-conspirator Abdullahi Yusuf had attempted travel to Syria to join ISIL but had been stopped by law enforcement at the Minneapolis/St. Paul International Airport.

Throughout 2014, the defendant continued to associate with his co-conspirators who remained in Minnesota, and he and his co-conspirators maintained contact with Syria-based co-conspirator Abdi Nur.

In October of 2014, the defendant and his co-conspirators Hanad Musse ("Musse"), Hamza Ahmed ("Ahmed"), Mohamed Farah, Adnan Farah, Guled Omar ("Omar"), Abdurahman Daud, ("Daud"), Abdullahi Yusuf, and other unindicted co-conspirators, engaged in meetings and preparations for travel to Syria to join *ISIL*. In furtherance of the conspiracy alleged in Count One of the Superseding Indictment, the defendant and co-conspirators Mohamed Farah, Ahmed and Musse purchased Greyhound bus tickets from Minneapolis to New York City on or about November 6, 2014. The defendant then traveled by Greyhound bus to New York City where, as planned, he met co-conspirators Mohamed Farah, Ahmed and Musse at the John F. Kennedy International Airport ("JFK"). While at JFK on November 8, 2014, the defendant purchased a round-trip ticket to Athens, Greece, with the intention of traveling onward to Syria to join *ISIL*. The defendant knew that co-defendant Musse had also purchased a ticket for this same flight to Athens for the same purpose. The defendant further knew that co-defendants Ahmed and Mohamed Farah were departing JFK together that same day to other interim destinations but with the ultimate purpose of traveling to Syria to join *ISIL*.

Federal law enforcement officers in New York prevented the defendant from boarding his flight. On November 14, 2014, after returning to Minnesota, the defendant was interviewed by agents of the FBI. The defendant lied to these agents, and told them that he had intended to vacation in Greece. The defendant also did not inform these agents

3

that he knew that co-conspirators Musse, Mohamed Farah and Ahmed also intended to travel to Syria to join *ISIL* after departing the United States via JFK.

Following their attempt to fly overseas on November 8, 2014, the defendant and his co-conspirators Mohamed Farah, Musse and Ahmed met to discuss and coordinate, among other things, false responses to anticipated law enforcement inquiries to conceal their activities. The co-conspirators agreed to continue to provide false information to authorities about their intentions to travel to Syria to join *ISIL*.

Throughout the winter and spring of 2015, the defendant participated in a series of meetings with co-conspirators Musse, Mohamed Farah, Adnan Farah, Omar and Daud regarding another attempt to travel to Syria to join ISIL. During these meetings, the group again discussed travel routes, means of financing travel and the use of fraudulent travel documents by various members of the conspiracy. To that end, the defendant willingly agreed to participate in a scheme to acquire false passports, and to travel from Minnesota to Mexico where he and his co-conspirators planned to fly overseas to join *ISIL* using the false passports.

On April 1, 2015, the defendant provided a passport photograph of himself to an individual he believed would be traveling with him. Unbeknownst to the defendant, this individual was a cooperating human source ("CHS"). When the defendant gave his photograph to the CHS, he fully intended for it be used in the production of a fake passport which he, the defendant, could then use to cross into Mexico and travel to Syria. On April 3, 2015, the defendant asked the CHS for the return of his passport photograph, fearing the number of co-conspirators involved in the plot to leave the United States for Syria increased the probability of getting caught by law enforcement. The defendant admits,

4

however, that he did not withdraw from the conspiracy to provide material support to *ISIL* when he sought the return of his passport photograph, rather, the defendant was attempting to preserve the viability of his and his co-conspirators' future travel to Syria. The defendant further provided, on or about April 9, 2015, $100 in U.S. currency to the CHS as a down-payment for co-defendant Mohamed Farah's false passport which the defendant knew would be used by Mohamed Farah to attempt travel to Syria to join *ISIL*.

3. **Waiver of Pretrial Motions**. The defendant has filed pretrial motions and now withdraws those motions based on the defendant's decision to enter a plea agreement with the United States. The defendant understands that by withdrawing the motions no court will consider or rule on the merits of those motions. The defendant withdraws these motions knowingly, voluntarily and intelligently.

4. **Statutory Penalties**. The parties agree that Count One of the Superseding Indictment carries maximum statutory penalties of:

    a.    fifteen (15) years' imprisonment;

    b.    a supervised release term of life;

    c.    a criminal fine of $250,000; and

    d.    a mandatory special assessment of $100, which is payable to the Clerk of Court immediately after sentencing.

5. **Revocation of Supervised Release**. The defendant understands that, if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment pursuant 18 U.S.C. §3583(e).

6. **Guideline Sentencing Stipulations**. The defendant agrees to be sentenced in accordance with the Federal Sentencing Act, 18 U.S.C. § 3551, *et seq.*, with reference to

the applicable United States Sentencing Guidelines ("U.S.S.G."). The parties believe that the Guidelines Manual incorporating amendments effective November 1, 2014, applies in this case. The parties agree that the following calculations regarding the Guidelines will ultimately be determined by the Court.

    a.    Base Offense Level.
The parties agree that the applicable guideline section is section U.S.S.G. § 2M5.3(a), which provides a base offense level of 26.

    b.    Specific Offense Characteristics.
The parties agree that the facts of this case support no specific offense characteristics.

    c.    Chapter 3 Adjustments.
The parties agree that the 12-level adjustment described at U.S.S.G. § 3A1.4(a) applies.

    d.    Acceptance of Responsibility. If the defendant (1) provides full, complete and truthful disclosures to the United States Probation Office, including providing complete, accurate and truthful financial information; (2) complies with all conditions of release; (3) testifies truthfully during the change of plea and sentencing hearings; (4) complies with this Agreement; and (5) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the government agrees to recommend that the defendant receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and to move for an additional one-level reduction under U.S.S.G. § 3E1.1(b). Whether there will be a reduction for acceptance of responsibility shall be determined by the Court in its discretion.

    e.    Total Offense Level.
With the application of U.S.S.G. § 3A1.4, the adjusted offense level is 38, minus 3 points for acceptance of responsibility, if applicable, for a total offense level of 35.

The Court will make the final determination of the total offense level.

    f.    Criminal History Category.
The parties believe that because U.S.S.G. § 3A1.4 enhancement applies, the defendant has a criminal history category of VI.

    g.    <u>Guidelines Range</u>. The parties agree that if the adjusted offense level is 35, and the defendant's criminal history category is VI, then the Guidelines range is 292-365 months. However, because 18 U.S.C. § 2339B carries a statutory maximum sentence of 15 years (180 months), the parties agree that the defendant's guidelines range is 180 months' imprisonment.

    h.    <u>Fine Range</u>.
The parties agree that if the total offense level is 35, the fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2. There is no agreement as to the imposition of a fine or, if one is imposed, the amount of any such fine.

    i.    <u>Supervised Release</u>.
The parties agree that the Sentencing Guidelines specify that, if a term of supervised release is ordered, the term of supervised release is 2 years to life. U.S.S.G. §§ 5D1.2(a)(2) and 5D1.2(b)(1).

    j.    <u>Departures</u>:
The parties agree that the defense reserves its right to argue on any grounds for a downward departure or variance from the ultimate guideline determination in this case.

    k.    <u>Further Offense Characteristics</u>:
The parties agree that the facts of this case support no other specific offense characteristics or chapter three adjustments.

7.    **<u>Discretion of the Court</u>**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determinations regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this Agreement and the defendant will be sentenced pursuant to the Court's determinations.

7

8. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. In this case, the defendant stands convicted of one count and is required to pay $100.

9. **Forfeiture**. The government reserves its right to proceed against any of the defendant's assets if said assets represent real or personal property involved in violations of the laws of the United States or are proceeds traceable to such property.

10. **Complete Agreement**. The foregoing sets forth the full extent of the Plea Agreement and Sentencing Stipulations in the above-captioned case.

Dated: September 17, 2015

ANDREW M. LUGER
United States Attorney

*[signature]*

BY: ANDREW R. WINTER
Assistant U.S. Attorney

*[signature]*

BY: JOHN DOCHERTY
Assistant U.S. Attorney

Dated: September 17, 2015

*[signature]*

ZACHARIA YUSUF ABDURAHMAN
Defendant

Dated: September 17, 2015

*[signature]*

JON HOPEMAN, Esq.
Attorney for Defendant

Dated: September 17, 2015

*[signature]*

MARNIE FEARON, Esq.
Attorney for Defendant

9