RECEIVED
APR 14 2016
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 15-CR-49 (03) (MJD/FLN)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | PLEA AGREEMENT AND |
| Plaintiff, ) | SENTENCING STIPULATIONS |
| ) | |
| v. ) | |
| ) | |
| 3. ADNAN ABDIHAMID FARAH, ) | |
| ) | |
| Defendant. ) | |

The parties to this case: The United States of America through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorneys John Docherty, Andrew R. Winter and Julie E. Allyn; and Adnan Abdihamid Farah (hereinafter referred to as "the defendant"), and his attorney, Kenneth Udoibok, Esq.; agree to resolve this case on the terms and conditions set forth below. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

**PLEA AGREEMENT**

1. **Charge**. The defendant agrees to plead guilty to Count 2 of the Second Superseding Indictment, which charges the defendant with conspiracy to provide material support and resources to *ISIL (Islamic State of Iraq and the Levant)*, a designated foreign terrorist organization, in violation of Title 18, United States Code, § 2339B. The government agrees to not prosecute the defendant for any additional offenses disclosed to the government by the defendant or known by the government as of the date of this

1

SCANNED
APR 14 2016
U.S. DISTRICT COURT MPLS

agreement. Count 1 as to this defendant and Count 7 will be dismissed at sentencing. However, all conduct known by the government can and will be used as relevant conduct under the Federal Sentencing Guidelines and as factors under 18 U.S.C. § 3553(e) at the defendant's sentencing.

2. **Factual Basis and Stipulated Facts**. The parties stipulate and agree that Count Two of the Second Superseding Indictment is true and that the defendant is guilty of that charge. The defendant agrees that the following facts are accurate and that the government has sufficient evidence to prove the following at trial beyond a reasonable doubt:

Between on or about March 1, 2014, and on or about April 25, 2014, the defendant became aware of a group of individuals both within the United States and outside the United States (hereinafter, "the co-conspirators") who had traveled or who desired to travel overseas to join and fight with *ISIL (Islamic State of Iraq and the Levant)*, a designated foreign terrorist organization. Because defendant wished to travel to Syria to join and fight with *ISIL* himself, he joined this group of aspiring travelers. Defendant was aware that *ISIL* was a designated foreign terrorist organization that engaged in terrorism and terrorist activity.

The defendant originally planned to travel to Syria in late May of 2014 together with co-conspirators Abdi Nur ("Nur") and Abdullahi Yusuf ("Yusuf"). In furtherance of the conspiracy, the defendant applied for a U.S. passport on an expedited basis on or about April 25, 2014, falsely claiming to the passport office that he planned to travel to China. The defendant admits that he obtained this passport in order to travel to Syria where he would join and fight with *ISIL*. As a result of defendant's parents confiscating his

2

passport, he was unable to travel to Syria with co-conspirators Nur and Yusuf. In June of 2014, the defendant learned that co-conspirator Nur had departed the Twin Cities for Syria and had joined *ISIL*, and that Yusuf had attempted to leave the Twin Cities for Syria to join *ISIL*.

During the summer of 2014, the defendant attended meetings with co-conspirators Hanad Musse ("Musse"), Hamza Ahmed ("Ahmed"), Mohamed Farah, Zacharia Abdurahman ("Abdurahman"), Guled Omar ("Omar"), Abdurahman Daud, ("Daud"), Abdullahi Yusuf, and other unindicted co-conspirators from the Twin Cities who aspired to fight for *ISIL* in Syria. The defendant also participated in paintball sessions with co-conspirators that were intended as training for eventual combat in Syria with *ISIL*. Throughout 2014, the defendant continued to associate with his co-conspirators who remained in Minnesota, and he and his co-conspirators continued to maintain contact with co-conspirator Nur.

In the winter and spring of 2015, the defendant participated in a series of meetings with co-conspirators Omar, Musse, Daud, Mohamed Farah, and Abdurahman regarding another attempt to travel to Syria to join *ISIL*. During these meetings, the group again discussed travel routes, means of financing travel, and the use of fraudulent travel documents by various members of the conspiracy. To that end, the defendant willingly agreed to participate in a scheme to acquire false passports, and to travel from Minnesota to Mexico. He and his co-conspirators planned to use the false passports to fly overseas from Mexico to join *ISIL*.

On March 30, 2015, the defendant provided a passport photograph of himself to an individual he believed would be traveling with him. Unbeknownst to the defendant, this

individual was a cooperating human source ("CHS"). Then, on April 3, 2015, the defendant provided $100 cash to the CHS as a down-payment for the false passport. At the time he gave his photograph and down-payment to the CHS, the defendant fully intended that the cash and photograph be used for the production of a fake passport which he, the defendant, could then use to cross into Mexico and travel to Syria. Also in furtherance of the conspiracy, the defendant provided co-conspirator Musse's photograph to the CHS on April 5, 2015, so that Musse could obtain his false passport for travel to Syria to join *ISIL*.

The defendant admits that on April 17, 2015, he participated in a conversation with co-conspirators Daud and Nur in which he learned that the group planning to drive to San Diego had what they believed were insufficient funds to cover costs for all the co-conspirators planning to drive to San Diego. Defendant admits that he then agreed to be excluded from the trip to San Diego. The defendant thereafter communicated to one or more co-conspirators that he had an alternate plan to reach Syria and join *ISIL*.

3. **Waiver of Pretrial Motions**. The defendant has filed pretrial motions and now withdraws those motions based on the defendant's decision to enter a plea agreement with the United States. The defendant understands that by withdrawing the motions no court will consider or rule on the merits of those motions. The defendant withdraws these motions knowingly, voluntarily and intelligently.

4. **Statutory Penalties**. The parties agree that Count Two of the Second Superseding Indictment carries maximum statutory penalties of:

    a.    fifteen (15) years' imprisonment;

    b.    a supervised release term of life;

4

      c.      a criminal fine of $250,000; and

      d.      a mandatory special assessment of $100, which is payable to the Clerk of Court immediately after sentencing.

5.    **Revocation of Supervised Release**. The defendant understands that, if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment pursuant to 18 U.S.C. § 3583(e).

6.    **Guideline Sentencing Stipulations**. The defendant understands he will be sentenced in accordance with the Federal Sentencing Act, 18 U.S.C. § 3551, *et seq.*, with reference to the applicable United States Sentencing Guidelines ("U.S.S.G."). The parties believe that the Guidelines Manual incorporating amendments effective November 1, 2015, applies in this case. The parties stipulate to the following calculations regarding the Guidelines, but understand that the question of which Guidelines apply to defendant's case will ultimately be determined by the Court:

      a.      Base Offense Level.
                 The parties agree that the applicable guideline section is section U.S.S.G. § 2M5.3(a), which provides a base offense level of 26.

      b.      Specific Offense Characteristics.
                 The parties agree that the facts of this case support no specific offense characteristics.

      c.      Chapter 3 Adjustments.
                 The parties agree that the 12-level upward terrorism adjustment described at U.S.S.G. § 3A1.4(a) applies.

      d.      Acceptance of Responsibility. If the defendant (1) provides full, complete and truthful disclosures to the United States Probation Office, including providing complete, accurate and truthful financial information; (2) complies with all conditions of release; (3) testifies

truthfully during the change of plea and sentencing hearings; (4) complies with this Agreement; and (5) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the government will agree to recommend that the defendant receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and to move for an additional one-level reduction under U.S.S.G. § 3E1.1(b). Whether there will be a reduction for acceptance of responsibility shall be determined by the Court in its discretion.

e. Total Offense Level.
With the application of U.S.S.G. § 3A1.4, the adjusted offense level is 38, minus 3 points for acceptance of responsibility, if applicable, for a total offense level of 35.

The Court will make the final determination of the total offense level.

f. Criminal History Category.
The parties believe that because the U.S.S.G. § 3A1.4 enhancement applies, the defendant has a criminal history category of VI.

g. Guidelines Range. The parties agree that if the adjusted offense level is 35, and the defendant's criminal history category is VI, then the Guidelines range is 292-365 months. However, because 18 U.S.C. § 2339B carries a statutory maximum sentence of 15 years (180 months), the parties agree that the defendant's guidelines range is 180 months' imprisonment.

h. Fine Range.
The parties agree that if the total offense level is 35, the fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2. There is no agreement as to the imposition of a fine or, if one is imposed, the amount of any such fine.

i. Supervised Release.
The parties agree that the Sentencing Guidelines specify that, if a term of supervised release is ordered, the term of supervised release is 2 years to life. U.S.S.G. §§ 5D1.2(a)(2) and 5D1.2(b)(1).

j. Departures:
The parties agree that the defense reserves its right to argue grounds for a downward departure or variance from the ultimate guideline determination in this case.

k. Further Offense Characteristics:
The parties agree that the facts of this case support no other specific offense characteristics or chapter three adjustments.

7. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determinations regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, neither party may withdraw from this Agreement and the defendant will be sentenced pursuant to the Court's determinations.

8. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. In this case, the defendant stands convicted of one count and is required to pay $100.

9. **Forfeiture**. The government reserves its right to proceed against any of the defendant's assets if said assets represent real or personal property involved in violations of the laws of the United States or are proceeds traceable to such property.

10. **Immigration Consequences**. The defendant recognizes that pleading guilty to Count Two of the Second Superseding Indictment may have consequences with respect to his immigration status, including removal or deportation, if he is not a citizen of the United States. The defendant understands that no one, including his attorney, the Assistant U.S. Attorneys, or the district court, can predict to a certainty the effect his conviction will have on his immigration status. Regardless of any immigration

7

consequences that may follow from his guilty plea, including the possibility of mandatory removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

11.   **Complete Agreement**.   This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Dated: April 14, 2016

ANDREW M. LUGER
United States Attorney

BY: ANDREW R. WINTER
Assistant U.S. Attorney

BY: JOHN DOCHERTY
Assistant U.S. Attorney

BY: JULIE ALLYN
Assistant U.S. Attorney

Dated: April 14, 2016

ADNAN ABDIHAMID FARAH
Defendant

Dated: April 14, 2016

KENNETH UDOIBOK, Esq.
Attorney for Defendant

8